# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| PRIME COMMUNICATIONS, L.P., | § | |
| | § | |
| *Plaintiff*, | § | CAUSE NO. 4:19-CV-00291 |
| | § | |
| v. | § | |
| | § | |
| RAGSDALE LIGGETT, P.L.L.C., | § | |
| | § | |
| *Defendant*. | § | |

## PLAINTIFF'S AMENDED COMPLAINT

TO THE HONORABLE JUDGE SIM LAKE:

Plaintiff Prime Communications, L.P. files this Amended Complaint.

## I.
## PRELIMINARY MATTERS

1. Plaintiff Prime Communications, L.P. is a Texas limited partnership with its principal place of business in Fort Bend County, Texas. Each of its limited and general partners is a citizen of Texas.

2. Defendant Ragsdale Liggett is a North Carolina professional limited liability company with its principal place of business at 2840 Plaza Place, Suite 400, Raleigh, North Carolina 27612. It is a North Carolina citizen.

3. This Court has subject-matter jurisdiction over this dispute pursuant to 28 U.S.C. 1332. This Court has general and specific personal jurisdiction over Defendant because pursuant to Texas's long-arm statute because Defendant routinely travelled to

Texas in performance of its agreements with Plaintiff. Further, Defendant entered into several contracts with Plaintiff in Texas.

4. Venue is proper in this district pursuant to 28 U.S.C. §1391(b).

5. Plaintiff requests a trial by jury and pays the appropriate fee.

## II.
## FACTS

6. Prime Communications is an authorized AT&T retailer and has stores across the United States. It is headquartered in Sugar Land, Texas.

7. In February 2012, a group of current and former employees (the "NC Plaintiffs") sued Prime Communications in North Carolina federal district court, alleging that Prime Communications failed to pay wages in accordance with the Fair Standards Labor Act and the North Carolina Wage and Hour Act (the "NC Lawsuit."). Prime Communications hired Ragsdale Liggett ("Ragsdale"), a law firm based in Raleigh, North Carolina, to represent it in the NC Lawsuit.

8. Between 2012 and 2015, Ragsdale lawyers Bill Pollock and Bo Walker travelled to Texas on at least six occasions for lawsuit-related tasks. These visits included:

- A two-day December 2012 visit to Texas to visit with Prime Communications' principals, conduct deposition preparation, and present Prime Communications' witnesses for deposition;

- A two-day June 2013 visit to Texas to conduct deposition preparation and to present Prime Communications' witnesses for deposition;

- An October 2015 visit to Texas to conduct a strategy session with Prime Communications' principals;

2

- A January 2016 visit to Texas to conduct a meeting with Prime Communications' principals regarding discovery;

- A four-day October 2016 visit to Texas to conduct deposition preparation and to present Prime Communications' witnesses for depositions.

- A two-day March 2017 trip to Texas to perform deposition preparation and to present Prime Communications' witnesses for deposition.

9. Additionally, Ragsdale exchanged more than 3,183 emails with Prime Communications' officers and other employees in Texas. On top of that, there were hundreds of phone calls over the course of the representation.

10. During the representation, Prime Communications also engaged Ragsdale to perform other legal matters, including advising Prime Communications with respect to the revisions that Prime Communications made to its nationwide employee handbook.

11. On January 15, 2014, the North Carolina magistrate judge granted, in part, the NC Plaintiffs' motions to certify the collective wage action. The magistrate judge further recommended that the NC Plaintiffs' motion to certify a class be granted in part. District Judge Howard confirmed and adopted the magistrate judge's rulings on March 24, 2014.

12. On April 10, 2014, Ragsdale, on behalf of Prime Communications, filed a petition with the Fourth Circuit Court of Appeals for permission to file an interlocutory appeal pursuant to Fed. R. Civ. P. 23(f)[1] of Judge Howard's March 24, 2014 Order. However, Rule 23(f) requires that any petition for permission be filed "within 14 days" after the order certifying the class is entered. Ragsdale filed the petition for permission **17 days**

---

[1] Fed. R. Civ. P. 23(f) allows parties to seek an interlocutory appeal of an order certifying a class if the Court of Appeals grants permission to do so.

after Judge Howard's March 24th Order. Accordingly, due to Ragsdale's missing of the deadline, the Fourth Circuit dismissed Prime Communications' permission as untimely filed.

13. In April 2014—soon after it had missed the deadline for filing the petition for permission to appeal—Ragsdale informed Prime Communications of its malpractice. Ragsdale persuaded Prime Communications to "waive" its malpractice claim against Ragsdale in exchange for an agreement that Ragsdale would represent Prime Communications at no charge to Prime. [2]

14. Accordingly, on July 18, 2014, the parties entered into the following letter agreement (the "Malpractice Release Agreement"):

> As a matter of professional courtesy, Ragsdale Liggett, PLLC ("Ragsdale") agrees that any legal fees for this matter that exceed the available legal defense costs available under any policy of insurance applicable to this matter maintained by Prime Communications, L.P. ("Client") will be waived so that the Client does not incur any legal expense from Ragsdale in excess of all available insurance coverage. Ragsdale further agrees to continue to use its best efforts to defend the Client in this matter. In exchange for this accommodation, Prime agrees to waive and hold harmless Ragsdale from any acts or omissions that have may [sic] occurred by any member or employee of Ragsdale during the defense of this matter.

However, Ragsdale did not advise Prime Communications in writing that it should obtain independent counsel to represent it with regard to the negotiation or execution of the Malpractice Release Agreement.

---

[2] Until this point, a portion of Ragsdale's fees were being paid by Prime Communications' insurer, and the remainder was being paid by Ragsdale.

15. After Ragsdale entered into the Malpractice Release Agreement, Ragsdale seemingly performed as little work as possible to defend the lawsuit—perhaps not surprising, given Ragsdale's economic disincentive to do so.

16. In April 2017, the issues concerning Ragsdale's lack of efforts came to a head. In that month, Ragsdale was preparing a very important motion for summary judgment as to the NC Plaintiff's collective-action claims. On April 5, 2017—the day the motion was due for filing—Ragsdale sent Prime Communications' general counsel a "final draft" of the motion that contained numerous errors and was far from final. One of Prime Communications' officers emailed Ragsdale:

> Bill,
>
> This is the final draft [of the MSJ] you want me to review when the intro paragraph is wrong? Amie sent this at 2:30 p.m. CST the day it is due for filing (24 page) motion[.]
>
> . . . .
>
> As such, please be put on notice that proper efforts for defense have not been used from your end and we hereby demand adequate assurances per out contractual agreement that Ragsdale will provide the counsel agreed to. We consider these efforts a breach of contract.

Prime Communications also emailed Ragsdale on April 6, 2018 about the status of important "action items" that had Ragsdale had let fall by the wayside. *Id*. After Ragsdale provided a non-response to his email, Prime Communications' officer emailed again on April 6, 2018:

> [W]e do not need details about reasons for [Ragsdale's] continued tardiness and delay going forward, we just need the materials as we have no faith in Ragsdale's ability to handle these matters without micromanagement. The dispositive motions yesterday once again set us back due to the sub-par

5

efforts and we firmly believe your most meaningful opportunity to turn the case around, and make good on your promises, has been squandered. As such, we reiterate our belief that you have breached our contract by not using best efforts.

17. On April 12, 2017—less than two weeks from the due date for Prime Communications' response to an important motion for summary judgment—Ragsdale notified Prime Communications that, notwithstanding the Malpractice Release Agreement, Ragsdale was withdrawing from the case due to "a conflict of interest" that had arisen solely as a result of Prime Communications' statement that Ragsdale's efforts were subpar. Ragsdale further stated that it would conduct no more work on the case, including filing a response to the summary judgment or meeting any upcoming deadlines. Ragsdale also submitted the following letter to Prime Communications' insurance company:

> This letter is to advise you of a conflict of interest that has arisen in our representation of your insured, Prime Communications, L.P., that will require our firm to withdraw from further representation of the insured in this matter.
> . . . .
>
> We received an email dated April 6, 2017 from [Prime Communications' VP and General Counsel], on which you were copied. In this email, it was alleged that our firm engaged in "sub-par" efforts," that the firm breached its contract of representation of Prime, and that the client had "no faith" in our ability to handle this litigation. These allegations by the client of potential malpractice have created a conflict of interest so that our firm can no longer continue to represent Prime Communications in this matter.

18. Of course, there was no real "conflict"—only Ragsdale's own, intentional subpar efforts. Indeed, it is now obvious that Ragsdale was *intentionally* performing so little work on the case that it would naturally cause Prime Communications to criticize

6

Ragsdale, at which time Ragsdale would claim "conflict" and repudiate its obligations under the Malpractice Release Agreement. This conclusion is bolstered by the fact that Ragsdale withdrew just over three years since the malpractice incident giving rise to the Malpractice Release Agreement—right after the alleged expiration of the statute of limitations for the underlying malpractice.

19. After Ragsdale withdrew, Prime Communications was forced to hire new counsel, for which it paid out of pocket for a portion of their fees.

20. After new counsel took over, it was discovered that Ragsdale—amongst its many mistakes—had inexplicably missed the February 2017 deadline for Prime Communications to designate a rebuttal expert and serve an expert report.

## III.
## CLAIMS AGAINST DEFENDANT

*(i)* *Breach of Contract*

21. Prime Communications incorporates the above factual allegations by reference herein.

22. Prime Communications entered into a valid contract with Ragsdale in which Ragsdale agreed to use its best efforts to defend Prime Communications **free-of-charge** for the remainder of the NC Lawsuit. Prime Communications performed its obligations under that agreement.

23. Ragsdale breached the parties' contract by (i) intentionally failing to use its best efforts to defend Prime Communications; and (ii) repudiating the agreement in its

entirety, thereby causing Prime Communications to hire additional counsel at its own expense.

24. Pursuant to Tex. Civ. Prac. & Rem. Code §38.002, Prime Communications is entitled to its fees pursuant to Tex. Civ. Prac. & Rem. Code §37.009.

*(ii) Breach of Fiduciary Duty*

25. Prime Communications incorporates the above factual allegations by reference herein.

26. Ragsdale breached its fiduciary duties to Prime Communications by (i) convincing Prime Communications to enter into the Malpractice Release Agreement despite it being against Prime Communications' best interest, (ii) by failing to inform Prime Communications, in writing, of the need to obtain independent counsel to represent it with regard to the negotiation and execution of that agreement, and (iiy) by manufacturing a fake "conflict" situation so that it could withdraw from the case.

27. As a result of Ragsdale's breaches, Prime Communications is entitled to damages, including a disgorgement of any fees paid to Ragsdale.

*(iii) Legal Malpractice*

28. Prime Communications incorporates the above factual allegations by reference herein.

29. Alternative to its breach of contract claim, Prime Communications asserts that Ragsdale committed malpractice by failing to timely petition the Fourth Circuit for review of the district court's order certifying the class in the NC Lawsuit and by missing expert designation dates.

30. As a result of Ragsdale's malpractice, Prime Communications has been damaged.

*(iv)* *Declaratory Judgment*

31. Prime Communications incorporates the above factual allegations by reference herein.

32. Pursuant to Tex. Civ. Prac. & Rem. Code §37.009, Plaintiff requests a judicial declaration of its rights, status, and other legal relations with regard to its relationship with Ragsdale.

33. Prime Communications is entitled to its attorney's fees in the prosecution of this matter.

## IV.
### CONDITIONS PRECEDENT

34. All conditions precedent to Plaintiff's recovery have been satisfied or excused.

## V.
### CONCLUSION

35. Plaintiff prays that Defendant be commanded to appear and answer, and that Plaintiff have and recover the following from it:

    a. Actual damages;

    b. A judicial declaration of its rights;

    c. Attorney's fees; and

    d. Any and all other relief Prime Communications may be entitled to at law or in equity.

Dated: March 6, 2019

Respectfully submitted,

**MAHENDRU, P.C.**

By: _____
Ashish Mahendru
Texas Bar No. 00796980
Darren Braun
Texas Bar No. 24082267
639 Heights Boulevard
Houston, Texas 77007
(713) 571-1519 (Telephone)
(713) 651-0776 (Facsimile)
amahendru@thelitigationgroup.com
dbraun@thelitigationgroup.com

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I certify that that on March 6, 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system. I certify that all parties in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

_____
Ashish Mahendru